***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award. The Full Commission AFFIRMS with some modifications the Opinion and Award of Deputy Commissioner Stanback.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. The date of the injury subject to this claim is October 4, 2007.
2. Defendants filed a Form 61 dated October 22, 2007 denying compensability of this claim.
3. Plaintiff's average weekly wage is $749.47, yielding a compensation rate of $499.65.
4. On October 4, 2007, the parties were subject to and bound by the provisions in the North Carolina Workers' Compensation Act.
5. On October 4, 2007, an employer-employee relationship existed between plaintiff and defendant-employer.
6. On October 4, 2007, defendant-employer employed three or more employees. 7. On October 4, 2007, Stonewood Insurance Company was the carrier on the risk.
8. The parties stipulated into evidence the following at the hearing before the Deputy Commissioner:
 a. Stipulated Exhibit 1: Pre-Trial Agreement
 b. Stipulated Exhibit 2: Plaintiff's recorded statement
 c. Stipulated Exhibit 3: Douglas Thomas' recorded statement
 d. Stipulated Exhibit 4: Plaintiff's medical records
9. The issues before the Commission are whether plaintiff sustained a compensable injury by accident to his left knee and, if so, to what amount of compensation is he entitled.
 ***********
Based upon the competent, credible evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT *Page 3 
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 59 years old. He finished the eighth grade and then quit school and went into the United States Navy where he obtained his GED when he was approximately 20 years old.
2. On October 4, 2007, plaintiff was employed with defendant-employer as a drilling specialist. The business of defendant-employer involves drilling holes in concrete for running conduit pipes, plumbing pipes, and telephone lines.
3. As a drilling specialist, plaintiff ran a core drilling machine which required him to drill holes through the concrete from one floor to another for the conduit pipes, plumbing pipes, and telephone lines. Plaintiff had worked for defendant off and on since 1980 and had worked for them continuously since 1995. The owner of the company throughout this period of time was Pete Moorefield.
4. Prior to the date of injury on October 4, 2007, plaintiff had never had a problem with his left knee. He had been treated by Dr. James Fleischli for problems with his right knee but never for problems with his left knee.
5. On October 4, 2007, plaintiff was assigned by defendant-employer to drill holes through floors for Mecklenburg Plumbing at a new building in Charlotte. He was working with Doug Thomas, who was plaintiff's first cousin and who had worked with defendant-employer for approximately ten years. Plaintiff and Doug Thomas were drilling holes in every floor of this new building for plumbing and electrical wiring.
6. At the time of his injury, plaintiff was working on the seventh floor and Doug Thomas was located on the eighth floor. Mr. Thomas had carried the core drilling machine to the eighth floor. Plaintiff was attempting to throw a drop cord to Mr. Thomas through the elevator shaft from the seventh floor to the eighth floor. The drop cord was approximately 100 *Page 4 
feet long and weighed approximately five pounds. The distance from the floor to the ceiling where plaintiff was attempting to throw the drop cord was approximately 13 feet.
7. As plaintiff attempted to throw the drop cord from the seventh floor to the eighth floor, he stepped off with his left leg into a "step down." This "step down" was in front of the elevator shaft and was an inch or two lower than the floor around it to allow for placement of marble plates or carpet around the elevator entrance.
8. Although plaintiff was aware that the "step down" was in the area where he was working, he neither noticed it nor intended to step into it when he attempted to throw the drop cord from the seventh floor to the eighth floor. Plaintiff testified that he did not realize he "was that close to where I could — would step off into it [the "step down"]." While plaintiff had attempted to throw a drop cord up an elevator shaft on many occasions previously, this was the first time he had actually misstepped into a "step down."
9. When plaintiff stepped into the "step down" with his left leg, all of the weight went onto that leg, causing him to injure his left leg and immediately fall to the floor. Doug Thomas did not see plaintiff fall, but immediately came down from the eighth floor and helped plaintiff off the floor.
10. The following morning on October 5, 2007, plaintiff and Doug Thomas spoke to Pete Moorefield and told him what had occurred. Mr. Moorefield directed Doug Thomas to take plaintiff to a physician at Pro-Med.
11. Plaintiff reported to Pro-Med on the morning of October 5, 2007 and was diagnosed with a left knee strain and possible ACL or collateral ligament tear. Pro-Med assigned restrictions, including walking limited to 50% of the day and work that would permit seated and walking periods. *Page 5 
12. Following his October 5, 2007 visit at Pro-Med, plaintiff attempted to work with Doug Thomas the remainder of the day. At the end of the day, Doug Thomas took plaintiff home and plaintiff did not work thereafter.
13. Plaintiff returned to Pro-Med on October 8, October 15, October 22, and October 29, 2007 and was assigned restrictions on every occasion. Defendant-employer was not willing to accommodate these restrictions.
14. On approximately November 1, 2007, plaintiff called the secretary for defendant-employer to inquire about his workers' compensation claim and was informed that his claim had been denied and that he was terminated. He met with Pete Moorefield on that day, was told he was no longer needed and was terminated. Plaintiff also lost his health insurance on this day.
15. Plaintiff was not insured through his wife's insurance on the date of the accident. However, he did become eligible under his wife's policy sometime in February 2008. Plaintiff then arranged for an appointment with Dr. James Fleischli, an orthopedic surgeon.
16. Plaintiff first saw Dr. Fleischli on February 27, 2008. Dr. Fleischli initially thought plaintiff had chondromalacia of the patella of the left knee and prescribed a cortisone injection and an MRI.
17. An MRI performed of the left knee on July 3, 2008 revealed a tear of the medial meniscus. Dr. Fleischli recommended surgery which was performed on August 9, 2008 consisting of (1) diagnostic arthroscopy, left knee with debridement of chondromalacia, removal of loose body, and excision of plica and (2) partial medial meniscectomy. Dr. Fleischli testified and the Full Commission finds that plaintiff's October 4, 2007 injury at work aggravated his pre-existing chondromalacia and caused the meniscus tear. *Page 6 
18. Dr. Fleischli or his physician's assistant saw plaintiff in follow up on August 13, 2008 and September 24, 2008 at which time the doctor released plaintiff to follow up as needed. Dr. Fleischli had not told plaintiff that he did not have restrictions at the time he last saw him.
19. Plaintiff has not returned to work since October 5, 2007 and defendant-employer has not offered any work to accommodate his restrictions. At his deposition Dr. Fleischli stated that prior to the August 9, 2008 surgery, plaintiff had work restrictions of no kneeling, squatting, crawling, or heavy lifting. After the surgery, plaintiff was taken out of work for approximately twelve weeks. Plaintiff testified at the hearing before the Deputy Commissioner on November 13, 2008, that he had not been able to find work but that he also had not looked for work. However, it does not appear from the record that as of the hearing plaintiff had been told by Dr. Fleischli that he no longer had work restrictions. Also, as of that date, plaintiff had not had sufficient time and opportunity to look for work in order to show whether he had any continuing disability as a result of the compensable injury. At the hearing plaintiff stated that his knee was "giving him a fit" and that his left leg "wants to fall out from under" him.
20. The greater weight of the evidence is that plaintiff sustained a compensable injury by accident to his left knee arising out of and in the course of his employment with defendant-employer. Plaintiff's misstep into the "step down" while throwing the cord through the elevator shaft on October 4, 2007 was an unexpected and unforeseen occurrence, constituting an unusual condition.
21. As the result of the compensable injury, plaintiff sustained an 8% permanent partial impairment to his left leg.
22. The Full Commission finds plaintiff's testimony to be credible and convincing.
 *********** *Page 7 
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6). An "accident" is an unlooked for and untoward event that was not expected or designed by the injured employee and the result of which was produced by a fortuitous cause. Harding v. Thomas HowardCo., 256 N.C. 427, 124 S.E.2d 109 (1962).
2. On October 4, 2007, plaintiff's misstep into the "step down" while throwing the cord through the elevator shaft caused an injury to his left knee. This misstep was an unexpected and unforeseen occurrence, constituting an unusual condition and interruption of plaintiff's normal work routine. Konrady v. U.S. Airways,Inc., 165 N.C. App. 620, 599 S.E.2d 593 (2004). Plaintiff had never encountered this situation in his employment with defendant-employer.
3. Therefore, on October 4, 2007 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6); Harding v.Thomas Howard Co., supra.
4. In order to meet the burden of proving disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury.Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been *Page 8 
unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages.Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. Lowes ProductDistribution,108 N.C. App. 762, 425 S.E.2d 454 (1993) (citations omitted). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms., Inc., supra.
5. In this case, due to his injury by accident, plaintiff was disabled from any employment from October 6, 2007 until at least the date of the hearing before the Deputy Commissioner on November 13, 2008. The record contains insufficient evidence regarding whether, after November 13, 2008, plaintiff was unable to obtain employment after a reasonable effort or whether it was futile for him to seek employment because of other factors. N.C. Gen. Stat. § 97-29; Russell v. Lowes ProductDistribution, supra.
6. As the result of his compensable injury by accident, plaintiff was temporarily totally disabled from any employment and is entitled to payment by defendants of temporary total disability compensation in the amount of $499.65 per week from October 6, 2007 and continuing until November 13, 2008. N.C. Gen. Stat. § 97-29.
7. As the result of the compensable injury by accident, plaintiff sustained an 8% permanent partial impairment to his left leg. N.C. Gen. Stat. § 97-31(15).
8. Plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred as a result of the compensable injury. N.C. Gen. Stat. § 97-25. *Page 9 
 ***********
Based on the findings of fact and conclusions of law, the Full Commission enters the following:
 A W A R D
1. Subject to the attorney's fee approved below, defendants shall pay to plaintiff temporary total disability compensation at a rate of $499.65 per week for the time period beginning October 6, 2007 and continuing until November 13, 2008. This amount has accrued and shall be paid in a lump sum.
2. A reasonable attorney's in the amount of 25% of the compensation awarded to plaintiff in Paragraph 1 above is hereby approved and shall be deducted from sums due plaintiff and paid directly to counsel.
3. Defendants shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of Workers' Compensation Act.
4. The issue of permanent partial disability is reserved for future decision.
5. In that the record contains insufficient evidence concerning the extent of plaintiff's disability, if any, after November 13, 2008, this issue is RESERVED for future determination or agreement of the parties.
5. Defendants shall pay the costs.
This 15th day of January, 2010.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 10 
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER